Monica L. MOORE, Plaintiff–Appellee,

v.

GWINNETT COUNTY, and XYZ Company, and John Doe, jointly and severally, Defendants,

J.O. Meadows, Defendant–Appellant.

No. 91–8500.

United States Court of Appeals, Eleventh Circuit.

Aug. 6, 1992.

---

Richard A. Carothers, County Atty., Gwinnett County Dept. of Law, Jonathan Weintraub, First Asst. County Atty., Sharon J. Strange Stepler, Asst. County Atty., Lawrenceville, Ga., for defendants-appellant.

J. Matthew Dwyer, Jr., Weinder, Dwyer and Yancey, Atlanta, Ga., Anne Woolf Sapp, Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and RONEY, Senior Circuit Judge.

BIRCH, Circuit Judge:

In this appeal we review the district court's denial of summary judgment sought by a defendant police officer on the basis of qualified immunity. Plaintiff-appellee Monica Moore sued defendant-appellant James O. Meadows under 42 U.S.C. § 1983 (1988) and various state law theories based upon the facts surrounding her arrest for a traffic offense in August 1988. With respect to her action for damages under section 1983, the appellee claimed that she was arrested without probable cause and that Meadows used excessive force in the conduct of her arrest. Meadows, a police officer for Gwinnett County, Georgia, moved for summary judgment on all claims, relying partly on the doctrine of qualified immunity as a shield against Moore's section 1983 theories. According to this doctrine, "public officials performing discretionary functions enjoy qualified [or good faith] immunity from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [w]ould have known.'" *Herren v. Bowyer*, 850 F.2d 1543, 1545 (11th Cir.1988) (footnote omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

The district court concluded that disputed issues of material fact defeated Officer Meadows's motion. In our review of that determination, we must view all evidence and factual inferences in the light most favorable to Moore. From that perspective, we undertake a plenary inquiry into the questions of whether the contours of the legal rights allegedly violated were clearly established at the time of the challenged actions and whether a material factual question exists as to the identified legal issues. *Hutton v. Strickland*, 919 F.2d 1531, 1536–37 (11th Cir.1990). On the basis of that analysis, we disagree with the district court's conclusion and find that qualified immunity clearly attaches to Officer Meadows's challenged conduct.

I.

The record, viewed favorably to appellee Moore, evinces a confrontation between Moore and Meadows resulting in flared tempers. In August, 1988, Moore was in her eighth month of pregnancy. On August 5, she encountered a road barricade as she travelled to visit her husband at his place of work. Moore stopped at the barricade, rolled down her window, and gestured to Officer Meadows, who was standing some distance away. Although Officer Meadows acknowledged her gesture with a wave, he did not immediately approach her car. Instead of waiting, Moore drove around the barricade—contemplating that the officer would pursue her if there was a problem. Moore Depo. at 13–14. He did. Meadows followed Moore in his patrol car with lights flashing and siren sounding until she stopped in a parking lot. She immediately ran from her car into a nearby building. She later emerged from the building—which proved to be her hus-

band's place of work—accompanied by her husband, brother-in-law, and father-in-law. Officer Meadows, still standing in the parking lot, asked for her driver's license and advised her that he was going to write her a ticket for running the roadblock. Moore flatly refused to show Meadows her driver's license. She instead walked away from the officer, turned off the ignition on her car, retrieved her purse from the car, and attempted once again to proceed past Officer Meadows and enter the building. Meadows announced that he was taking Moore to jail and attempted to restrain her. He "grabbed" her with both of his arms—taking her left arm in one hand and placing his right arm across her abdomen. Moore Depo. at 29. Moore pivoted loose from the officer and fled into the building.

At this point, Moore's husband interposed himself and advised Meadows that Moore was eight months pregnant. Mr. Moore then entered the building and attempted to persuade his wife to produce her license. Although Moore failed to locate her license, she eventually provided her name to the officer. After calling in Moore's name on his patrol car radio, Meadows learned that her license was suspended. Following these events, Officer Meadows charged Moore with failure to obey a traffic control device and driving on a suspended license, then permitted Moore's husband to drive her to the Gwinnett County Jail where she was detained for three hours.

Two days later, Moore experienced unpleasant physical symptoms and noticed a sensation that the fetus she was carrying had become inactive. She visited her treating obstetrician the next day and was advised that the fetus's heart was beating and that she should continue her regular visits. Approximately a week after the incident, Moore was advised that the fetus was dead. Three days later, the fetus was stillborn.

The record contains only one expert medical opinion assessing these events—that of Moore's obstetrician, Dr. Khalad Goheer. Dr. Goheer rendered the following opinions: (1) that he saw at delivery no signs of maternal or fetal injury which would have caused the fetus's death; (2) there was no cause apparent to him for the fetus's death; and (3) some cause other than an injury to Moore caused the death. *See* Goheer Aff., R1–12 Ex. B. The record also contains the opinions of Moore and her husband to the effect that the child's appearance at birth led them to believe that he may have been injured. Moore Depo. at 35–36; James Moore Depo. at 37.

## II.

On the basis of these events, Moore now claims that she was arrested in violation of her Fourth Amendment rights. Presumably, it is alleged that the assertedly unlawful arrest by Officer Meadows resulted in injuries to herself and her child. "An individual's right to be free from unlawful arrest and imprisonment implicates a liberty interest indisputably protected by the Constitution and federal laws, the violation of which may give rise to a cause of action under § 1983." *Motes v. Myers*, 810 F.2d 1055, 1059 (11th Cir.1987). As the district court noted, whether such a cause lies in this case depends on the question of whether Officer Meadows had probable cause to effect the arrest.

However, the question before us— and that which was before the district court—is not precisely whether probable cause existed in fact. When a law enforcement officer seeks summary judgment on the basis of qualified immunity, we only must ask whether, viewing the facts in a light favorable to the non-movant, there was *arguable* probable cause for the arrest. *See Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990). This is equivalent to asking whether a "reasonable officer[ ] in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause

existed...." *Id.*[1]

Due to factual disputes about the sequence of events, we assume in Moore's favor that Officer Meadows conducted the arrest based solely on Moore's failure to obey the road barricade and refusal to produce her driver's license. The question, therefore, is whether arguable probable cause existed to arrest an uncooperative individual who had committed a misdemeanor traffic offense in the officer's presence. The answer is readily provided by Georgia law, which provides that probable cause can be grounded on a traffic misdemeanor. Under O.C.G.A. § 17–4–20(a) (Michie 1990), Georgia law enforcement officers have the authority to make warrantless arrests for misdemeanors committed in their presence, including traffic misdemeanors. *See United States v. Wilson,* 853 F.2d 869, 872–74 (11th Cir.1988), *cert. denied,* 488 U.S. 1041, 109 S.Ct. 866, 102 L.Ed.2d 990 (1989). Hence, arguable probable cause was triggered by Moore's bypassing the roadblock without permission.[2] Moreover, our finding of arguable probable cause is reinforced by undisputed facts as to Moore's demeanor. By the time Officer Meadows restrained her, she had already fled from him once. *See* Moore Depo. at 26. According to her own account, she was flatly uncooperative when she returned to the parking lot, refusing to produce identification simply because she believed that the entire altercation was Officer Meadows's fault. *See* Moore Depo. at 28.[3]

We need not speculate whether an arrest was the most appropriate course under the circumstances of this case. Instead, we need only state what is virtually obvious from the facts: Officer Meadows had arguable probable cause to effect the arrest such that he is entitled to qualified immunity against Moore's unlawful arrest claim. Thus, the district court erred in failing to enter summary judgment on that basis.

## III.

■ Whether Officer Meadows is entitled to qualified immunity against Mrs. Moore's excessive force claim depends on whether his actions were objectively unreasonable under the law which was clearly established at the time of the incident. Accordingly, his actions are to be evaluated with reference to four factors:

(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in *good faith or maliciously and sadistically.*

*Leslie v. Ingram,* 786 F.2d 1533, 1536 (11th Cir.1986). In passing, we would note that the record lends weak support to Moore's claim with respect to the third and fourth factors. For summary judgment purposes, we credit, to the extent permissible, the allegation by the Moores that Mrs. Moore's stillborn child appeared to them to be injured; however, the record also compels

---

**1.** Nevertheless, the issue of probable-cause-in-fact seems to be the focus of the district court's analysis. In light of certain factual disputes, the district court deemed itself unable to determine if probable cause existed and therefore concluded that there was potential merit to Moore's claim sufficient to preclude summary judgment. *See* R1–22–23–25; *see also id.* at 26 (equating question of probable-cause-in-fact relevant to Moore's state law claims with the question of arguable probable cause relevant to qualified immunity to section 1983 liability). In so doing, the court misapplied the relevant legal standard. We reaffirm that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and ... in such cases those officials ... should not be held personally liable [under section 1983]." *Anderson v. Creighton,*

483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987).

**2.** O.C.G.A. § 40–6–26(b) (Michie 1991) provides:

No person shall, without lawful authority, drive around or through or ignore any official traffic-control device so as to go onto an officially closed highway....

Violation of this statute is a misdemeanor. *Id.* § 40–6–1; *see also Id.* § 40–6–2 ("Obedience to authorized persons directing traffic.").

**3.** Georgia imposes a statutory duty to provide a driver's license to a law enforcement officer demanding it. *See* O.C.G.A. § 40–5–29(b) (Michie 1991).

our attention to the fact that the only *expert* medical opinion offered indicates that no injury to Moore or her unborn child—severe or otherwise—resulted from the incident. Moreover, the record contains no evidence to show malice on Officer Meadows's part other than his irate manner during the incident.

Regardless, the second factor, which essentially asks whether disproportionate force was used, is dispositive. This case involves none of the indications of excessive force recognized in our past cases. However, we are also aware that a police officer's use of force must be examined in light of the facts of each individual case. *See Popham v. Kennesaw*, 820 F.2d 1570, 1576 (11th Cir.1987). Here, the facts indicate a need to initiate physical restraint as Moore was attempting to flee for a second time. Moreover, the facts are clear that Meadows restrained Moore simply by putting his hands around her. *Cf. Id.* at 1577. We also note that the Officer did not apply any greater (and potentially disproportionate) force after Moore spun loose from his restraint. Officer Meadows did not strike Moore, throw her to the ground, pull her against him, or use or brandish a weapon.

Under these circumstances, common sense dictates a finding that Officer Meadows's use of force was reasonable according to established standards. Even adopting Moore's version of the facts, there is no suggestion that Meadows went beyond firmly taking hold of Moore and contacting her abdomen in the process. The act of physically holding back a misdemeanor suspect who is attempting to leave the scene, even given her pregnant condition, cannot sensibly be considered disproportionate as measured by this circuit's precedents. Accordingly, we find no excessive force sufficient to indicate that Officer Meadows violated any clearly established constitutional right. The district court therefore erred in denying summary judgment on the basis of qualified immunity with respect to this claim.

## IV.

Moore has asserted additional claims against Meadows under Georgia law

for false arrest, false imprisonment, and malicious prosecution. *See* O.C.G.A. § 51–7–1 (Michie 1982); *id.* § 51–7–20; *id.* § 51–7–40. However, the district court's denial of summary judgment with respect to these claims is an unappealable order that is not before this court as we review the district court's determination with respect to qualified immunity. *Cf. Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *Hutton v. Strickland*, 919 F.2d 1531, 1535 (11th Cir. 1990). Accordingly, we remand the cause for proceedings on the remaining theories consistent with the factual analysis set forth herein. With respect to the claims under 42 U.S.C. § 1983 against Officer Meadows, we reverse, finding that qualified immunity extends to the contested conduct in this case.

REVERSED and REMANDED for appropriate proceedings.