James **LYLE**, Jim West, and Reece Starnes, Plaintiffs,

v.

M.E. **DODD**, individually and as an officer of the Fulton County Police Department, Defendant.

Civ. No. 1:92–CV–1422–JEC.

United States District Court, N.D. Georgia, Atlanta Division.

March 22, 1994.

Sonja L. Salo, Office of Sonja L. Salo, Atlanta, GA, for plaintiffs.

Denval Anthony Stewart, Office of Fulton County Atty., Atlanta, GA, for defendant.

### ORDER

CARNES, District Judge.

This case is presently before the Court on defendant's Motion for Summary Judgment [# 17–1]. The Court has reviewed the record and the arguments of the parties and, for the reasons set forth below, concludes that summary judgment is appropriate for defendant on plaintiffs' claims under 42 U.S.C. § 1983. Accordingly, the Court grants de-

fendant's Motion for Summary Judgment and dismisses plaintiffs' state-law claims.

### I. Facts [1]

On June 13, 1990, plaintiffs were moving a house through Fulton County when they were stopped by defendant police officer Melvin Dodd. Plaintiff James West was the owner and operator of the house moving detail. The Building Code Regulations, Section 31–1–11 *et seq.* of the Code of Laws of Fulton County, requires that any person moving a house over the roads of any unincorporated area must obtain a written permit from the Director of Inspections and Licenses of Fulton County. The Building Code Regulations in Section 31–1–15 further require that at least 24 hours before commencing with the moving of a house, the applicant must notify the captain of the watch in charge of the police of the time, date, and route of the move and must request an officer to escort the move.

Plaintiff James West did not obtain a permit because he believed state law did not require that he obtain a permit from the county and he did not accept the validity of the county's requirements. Two hours prior to leaving on June 13, West called the radio room of Fulton County Police Department requesting that the county provide them with a police escort. When the house moving detail arrived at the Fulton County line and the Fulton County police escorts were not present, the house moving detail continued traveling through Fulton County without the escorts.

Defendant Dodd saw plaintiffs moving the house near the intersection of Cedargrove Road and Ridge Road. Defendant notified Unit 215 that a house was being moved without police escorts, and he was told to stop plaintiffs. Officer Dodd stopped plaintiffs by pulling in front of the truck moving the house ("the pull truck"). Upon exiting his car, Officer Dodd saw James West, already out of the pull truck and approaching his vehicle. Officer Dodd asked West if he had a Fulton County permit. When West responded that

1. The facts recounted below are a compilation of the facts that the parties do not dispute. (Def.'s Stmt. of Material Facts as to Which There is No Genuine Issue to be Tried; Pls.' Resp. to Def.'s Stmt. of Undisputed Material Facts).

he did not need one, Dodd placed West in the back seat of Dodd's police car. Plaintiff James Lyle secured the vehicle and exited the pull truck through the driver's side door. Officer Dodd took Lyle's license and directed him to sit in the truck.

Officer Dodd, who was not familiar at that time with filling out the paper work for a house moving violation, called on his radio and waited for his supervisor, Sergeant Mulkey, to arrive on the scene and assist him. This took anywhere from a few minutes to fifteen minutes.[2] Upon arriving at the scene, Sergeant Mulkey talked with Officer Dodd and directed him how to proceed in handling the stop.

Officer Dodd proceeded to call on the radio to check the license of James Lyle, whom he believed was the driver of the pull truck. Over the radio, Officer Dodd was informed that Lyle had a suspended license in one state and a valid license in another. Lyle was also placed in Dodd's vehicle. Lyle was subsequently transported to the Fulton County Jail by Officer R.G. Marlow.

Upon returning to the scene in the lead truck, plaintiff Reece Starnes was placed in Dodd's vehicle along with West. West was charged with violations of the house moving ordinance and damage to public property. He was released at the scene with a copy of the charges. Starnes was released at the scene without any charges.

Plaintiffs claim that defendant violated plaintiffs Lyle and Starnes' constitutional rights, in that they were arrested without probable cause in violation of their Fourth Amendment rights. Plaintiffs Starnes and West additionally assert that the nature of their detention in a "furnace-like" patrol car for approximately an hour was unjustifiably extreme and violated their Fourth, Fifth, and Fourteenth Amendment rights in that: (1) the conditions constituted a *de facto* and unreasonable seizure of their persons in violation of their Fourth Amendment rights; (2) their detention in a hot patrol car was an excessive use of force in violation of the

Fourth Amendment; and (3) their right to substantive due process under the Fifth and Fourteenth Amendment was violated by the nature of their detention. Plaintiffs further assert state-law claims for false arrest, false imprisonment, abuse of process, and negligence.

## II. *Discussion*

### A. *Standard for Summary Judgment*

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552.

The movant bears the initial responsibility of asserting the basis for his motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence[3] designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th

---

2. The parties have not specified the exact amount of time.

3. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## B. *Claims pursuant to 42 U.S.C. § 1983*

### 1. *Claims against Defendant Dodd in his Individual Capacity*

■ As to the claims against defendant Dodd in his individual capacity, the defendant has moved for summary judgment on the basis of qualified immunity. In addressing a qualified immunity defense, a two part analysis is used. First, the defendant must prove that he was "acting within the scope of his discretionary authority" when the allegedly wrongful acts occurred. Second, if the defendant provides such proof, the burden shifts to the plaintiff to show that the defendant's actions violated "clearly established constitutional law" of which a reasonable person would have known. *Hudgins v. City of Ashburn,* 890 F.2d 396, 404 (11th Cir.1989).

The parties do not dispute that defendant was acting within the scope of his discretionary authority. In his Motion for Summary Judgment, defendant further concedes that "the laws as they relate to traffic stops and arrests incident thereof" were clearly established. (Def.'s Br. in Supp. of Mot. for Summ.J. at 18). Accordingly, for summary judgment purposes, the critical question is whether plaintiffs have provided competent evidence that defendant's actions violated clearly established constitutional standards of which a reasonable person would have known—an element on which plaintiffs clearly would bear the burden of proof at trial.

■ The burden is on plaintiff to show that, when defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful. *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.

1993). If the law has not staked out a bright line "right" in factual circumstances highly similar to those presented, qualified immunity almost always protects the defendant. To defeat summary judgment on qualified immunity because of a dispute of material fact, plaintiff must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts. *Id.*

### a. Detention of James Lyle

Encounters that implicate the Fourth Amendment fall into two categories: (1) investigative stops or "seizures", for which reasonable suspicion is required and (2) full scale arrests, for which probable cause is necessary. *United States v. Espinosa–Guerra,* 805 F.2d 1502, 1506 (11th Cir.1986). Plaintiff Lyle does not appear to dispute that defendant Dodd had reasonable suspicion to stop the detail initially.[4] Plaintiff Lyle instead appears to maintain that the encounter constituted an arrest for which probable cause was lacking. Specifically, he asserts that he was under arrest when Dodd told him to stay in his truck and took his driver's license and that, at that time, Officer Dodd did not have probable cause to arrest him. Defendant, on the other hand, appears to contend that the initial stop was only an investigatory stop, for which reasonable suspicion clearly existed, but that even if it were a full scale arrest, probable cause also existed. Of course, once the officer "called in" Lyle's license and discovered that he had licenses from two states and that one license was suspended, plaintiff does not dispute that probable cause existed to arrest at that point.

■ As noted *supra,* it is clear that not all stops or seizures rise to the level of an arrest that must be supported by probable cause. *United States v. Roper,* 702 F.2d 984, 986 (11th Cir.1983). In distinguishing an investigative stop from a *de facto* arrest, the Court must not adhere to "rigid time limitations" or "bright line rules," but must use "common sense and ordinary human experience."

---

**4.** Plaintiff concedes that there was "probable cause to stop the detail." (Pls.' Resp. [# 21] at 7). Plaintiff presumably is conceding the existence of reasonable suspicion, not probable cause.

*United States v. Hardy,* 855 F.2d 753, 759 (11th Cir.1988), *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1137, 103 L.Ed.2d 198 (1989) (quoting, *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)). The totality of circumstances determines when a seizure has become an arrest, requiring probable cause. *Courson v. McMillian,* 939 F.2d 1479, 1492 (11th Cir. 1991). The Court should consider several factors in its analysis, including "the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention." *Hardy,* 855 F.2d at 759. The Eleventh Circuit has recognized that an officer's not taking the detained person to a station or office, not conducting a full search of the person, or not touching the individual are factors indicating an investigatory stop, rather than an arrest. *Courson,* 939 F.2d at 1492.

■ Here, defendant Dodd told Lyle to remain in his truck and asked to see his driver's license. When Lyle handed Dodd his license, Lyle asked why Dodd wanted the license. Lyle testified in his deposition that Dodd responded: "Y'all are going to jail." (Lyle Dep. at 89). Plaintiff has not persuaded the Court that those facts are sufficient to convert the stop, for which reasonable suspicion clearly existed, into an arrest. The Court holds that even if the seizure were an arrest, however, defendant Dodd is entitled to qualified immunity for his arrest of plaintiff Lyle because a reasonable officer could have believed that probable cause existed to support even the initial stop.

■ In determining whether probable cause existed to arrest, the Court must consider the facts available to the arresting officer at the moment of arrest. *United States v. Allison,* 953 F.2d 1346, 1349 (11th Cir. 1992). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the sus-

pect had committed or was committing a crime." *U.S. v. Diaz–Lizaraza,* 981 F.2d 1216, 1222 (11th Cir.1993) (quoting, *United States v. Gonzalez,* 969 F.2d 999, 1002 (11th Cir.1992)).

■ When an officer asserts qualified immunity, the issue is whether the officer had *arguable* probable cause to arrest plaintiff. *Moore v. Gwinnett County,* 967 F.2d 1495, 1497 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993). This is equivalent to stating that "the officer is entitled to qualified immunity if a reasonable officer 'could have believed that probable cause existed.'" *Post,* 7 F.3d at 1558.

At the time defendant Dodd told plaintiff Lyle to stay in the truck, Dodd had seen the house moving detail moving the house without police escorts, and he knew that plaintiffs did not have the required permit to move the house. Moreover, Lyle was the only person that Dodd had seen behind the steering wheel of the truck. (Dodd Dep. at 31).

The issue material to qualified immunity is whether plaintiff has demonstrated that no reasonable officer in defendant Dodd's position could have believed that probable cause existed to believe that Lyle had violated the regulation. Although, as it later turned out, Lyle perhaps had not been driving the truck, no reasonable fact-finder could disagree that a reasonable officer in defendant Dodd's place could have believed that probable cause existed to believe that plaintiff Lyle had violated the regulation. Indeed, if the question before this Court were not what a reasonable officer believed, but whether probable cause, in fact existed to arrest Lyle at the moment he was stopped, the Court would conclude that probable cause did exist. Accordingly, defendant Dodd is entitled to qualified immunity for any "arrest"[5] of plaintiff Lyle.

b. Detention of Plaintiff Starnes

■ Plaintiff Reece Starnes was driving the lead truck as plaintiffs moved the house through Fulton County. Defendant Dodd did not stop Starnes when he stopped the

---

5. Alternatively, as discussed *infra* with regard to the detention of plaintiff Starnes, a reasonable officer would not necessarily have realized that directing Lyle to stay in his truck constituted an arrest, as opposed to an investigatory stop for which the requisite reasonable suspicion clearly existed.

pull truck. Instead, Starnes saw that Dodd had stopped the pull truck, and he went back to the area of the stop and parked on the side of the road. Officer Dodd detained Starnes because he was part of the group. (Dodd Dep. at 25; Pls.' Resp. at 11). Dodd and the other officers later released Starnes without any charges against him.

Plaintiff Starnes argues that Dodd did not have probable cause to arrest him. Notwithstanding the fact that Starnes has testified that Officer Dodd used the term "arrest" when he ordered Starnes to sit in the car, it is not at all clear that Officer Dodd believed that he was arresting Starnes, as opposed to detaining him for purposes of further investigation. Specifically, Officer Dodd indicated that he had directed Starnes to take a seat in the car because he was part of the detail and the officer wanted to "find out what was going on." (Dodd Dep. at 25) Officer Dodd indicated that he did not know of any laws that Starnes had broken, but that he did not consider it "detention" to "sit someone in the backseat to write a traffic citation." Instead, according to the officer, "It's ... policy within the county that when ... you're talking to someone in an investigative state or you're writing traffic citations that they have a seat in the rear of the car." (Dodd Dep. at 24, 53). Finally, after consulting with his superiors about the proper action to take, Officer Dodd allowed Starnes to leave and never formally arrested or cited him for any violations. Accordingly, the Officer's description of the events, and his subsequent actions, indicate his belief that his acts constituted an investigatory stop.

Thus, the Court must focus on whether a reasonable officer would think that the encounter constituted an investigatory stop, for which only reasonable suspicion is required,

and, if so, whether a reasonable officer could think that reasonable suspicion existed. Addressing the second prong first—whether a reasonable officer could think that reasonable suspicion to detain existed—it is clear to the Court that a reasonable officer could so conclude.

On June 13, 1990, the Building Code Regulations, § 31–1–11 of the Code of Laws of Fulton County provided:

Any person, firm or corporation desiring to move over the roads of any unincorporated area, any house or other building, shall apply to, and obtain from the Director of Inspections and Licenses of Fulton County a written permit to do so.

Section 31–1–15 of the Regulations additionally provided that an applicant shall notify the police department 24 hours in advance of the move and request the department to escort the move. Plaintiffs had complied with neither of these regulations.

Plaintiff Starnes does not dispute the officer's belief that plaintiff was "associated with the house moving detail," [6] (Pls.' Resp. at 11; Dodd Dep. at 25), but instead argues that there was no evidence that he had violated the law. (Pls.' Resp. at 11). The Court concludes, however, that one who had assisted the detail, whether by driving the lead truck or otherwise, arguably would have been guilty of aiding and abetting the above violations of law. The officer's awareness that there was a lead truck and his belief that plaintiff Starnes was part of the group constituted reasonable suspicion to further investigate Starnes' role.

As to the first prong—whether a reasonable officer could have concluded that the detention of Starnes constituted only an in-

6. Officer Dodd testified that a lead truck had preceded the truck moving the house and he indicated his belief that plaintiff Starnes was part of that detail. (Dodd Dep. at 25, 44). Plaintiff, who bears the burden of proof on liability and on the question whether the officer consciously disregarded a clear constitutional standard, did not probe the basis of the officer's belief, and the Court accepts his answer, as apparently does the plaintiff, as an undisputed fact. Beyond the officer's statement of his belief that Starnes was a member of the house moving group, the Court notes that the officer was aware that there had

been a lead truck. Moreover, after observing that the house had been stopped, Starnes came back to the spot where the activity was ongoing and, according to even his testimony, refused to answer the officer's question as to whether he was with the other two men, responding only by asking what had they done. His refusal to respond, at a time when he was not under arrest and thus would not be subject to *Miranda* warnings, could have been construed by the officer as further information tying him to the moving venture.

vestigatory stop as opposed to a full scale arrest—this presents a closer question, but the Court nevertheless concludes that a jury could not conclude that *no* reasonable officer could have believed that the detention was an investigatory stop. *Post*, at 1557–59. As noted *infra*, there is no bright line demarcation to distinguish an investigatory stop from a full scale arrest. *Sharpe*, 470 U.S. at 685, 105 S.Ct. at 1575; *Espinosa–Guerra*, 805 F.2d at 1509; *Hardy*, 855 F.2d at 759. Nor can a Court employ a rigid time line limitation. *Sharpe*, 470 U.S. at 685, 105 S.Ct. at 1575. Rather, one looks to the reasonableness of the level of detention and in determining whether an investigative detention has become unreasonable—that is, has become converted to an arrest—"common sense and ordinary human experience must govern over rigid criteria." *Id.* In examining the question of reasonableness, one looks to the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention. *Hardy*, 855 F.2d at 759–61.

In the present case, defendant Dodd directed plaintiff Starnes to sit in the patrol car while the former checked with his superiors and determined whether to issue a citation and what kind of citation to issue for the two men. According to plaintiff West, he sat in the car for approximately an hour and plaintiff Starnes sat for approximately thirty to forty minutes [7] while defendant Dodd consulted with his superior officer and prepared the citation. Ultimately, Officer Dodd released both men, issuing a citation to plaintiff West, but no citation to plaintiff Starnes.

Although the length of detention—30 to 40 minutes—is toward the outside durational limits for an investigatory stop, the Court finds that the other factors suggest that a reasonable officer could believe that no arrest occurred under the circumstances of this

case. Specifically, after directing plaintiff to sit in the car, Officer Dodd did not question plaintiff Starnes or cause him or his vehicle to be searched; the record does not indicate that he impounded plaintiff Starnes' vehicle. Finally, and most significantly, defendant Dodd released Starnes and issued him no citation. Although Officer Dodd could perhaps have endeavored to act more quickly in making a determination whether to issue a citation, a factfinder could not determine that *all* reasonable officers would conclude that the encounter constituted an arrest, as opposed to an investigatory stop.

■ Alternatively, even if all reasonable officers would conclude that the encounter constituted an arrest, the Court concludes that a reasonable officer could conclude that probable cause existed to support the arrest.[8] Here, the evidence is undisputed that Officer Dodd believed that plaintiff Starnes had participated in a house moving detail that was in clear violation of county regulations. Such belief was reasonable under the facts and would provide a reasonable officer with a basis for believing that probable cause to arrest existed.

For all the above reasons, the Court concludes that defendant Dodd is entitled to qualified immunity and summary judgment on Starnes' claim, as well.

c. Starnes and West's Detention in the Patrol Car

Plaintiffs allege that Dodd placed West in his patrol car immediately after he told West that he was under arrest. The patrol car is designed so that the windows and doors cannot be operated from the back seat, and access from the back seat to the front seat is prevented by a metal screen. Plaintiffs contend that the day was clear and hot, the car was not parked in the shade, and there had been no rain. West alleges that Dodd placed Starnes in the car about twenty or thirty

---

**7.** Plaintiff West testified that he was in the patrol car for approximately twenty to thirty minutes before plaintiff Starnes joined him and for approximately an hour total. (West Dep. at 25, 66).

**8.** Officer Dodd did state in his deposition that Starnes had not broken any laws to his knowledge. (Dodd Dep. at 24). The Court, however,

must determine objectively whether the officer could have believed that probable cause existed, even though the officer doubts the existence of probable cause. *See United States v. Roy*, 869 F.2d 1427, 1432 (11th Cir.), *cert. denied*, 493 U.S. 818, 110 S.Ct. 72, 107 L.Ed.2d 38 (1989).

minutes after he placed West in the car and that West was in the car for approximately an hour. (West Dep. at 66). Plaintiffs Starnes and West assert that their detention in the uncomfortably hot car violated their Fourth, Fifth, and Fourteenth amendment rights.

### 1. Fifth Amendment rights

 In plaintiffs' response to defendant's Motion for Summary Judgment, plaintiffs argue that their detention violated their Fifth and Fourteenth amendment rights. It is axiomatic that the Fifth Amendment due process clause applies only to the federal government, while the Fourteenth Amendment due process clause applies to the states. *Bartkus v. Illinois,* 359 U.S. 121, 124, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959). Because plaintiffs have not made a valid claim under the Fifth Amendment, summary judgment is appropriate as to plaintiffs' Fifth Amendment claim.

### 2. Fourth and Fourteenth Amendment rights

In *Graham v. Connor,* 490 U.S. 386, 386–88, 109 S.Ct. 1865, 1867, 104 L.Ed.2d 443 (1989), the Supreme Court addressed what constitutional standard governs a citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of the citizen. *Graham* involved a claim under § 1983 against police officers for allegedly excessive force during an investigative stop. The Court began by noting that the court below, like the vast majority of lower federal courts at the time, had applied a test based upon the Due Process Clause.

The Supreme Court, however, rejected the Second Circuit's due process test. The Court noted that the analysis of a claim of excessive force begins "by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Id.* at 394, 109 S.Ct. at 1870. The Court went on to observe that in most cases, the constitutional right will be one of the Constitution's two primary sources of protection against physically abusive conduct by the government: the Fourth Amendment's prohibition of unreasonable seizures of the per-

son or the Eighth Amendment's ban on cruel and unusual punishment. Because the Eighth Amendment comes into play only after conviction, the Court held that the Fourth Amendment provided the proper basis of analysis:

> Today we make explicit what was implicit in *Garner's* [*Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)] analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

*Id.* at 395, 109 S.Ct. at 1871 (emphasis in original).

The Court stated that the appropriate test to determine whether a Fourth Amendment violation has occurred requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the governmental interests at stake. *Id.* A court should consider the facts and circumstances confronting the officers, without regard to their underlying intent or motivation, in determining whether the officers' actions were objectively reasonable. The Supreme Court noted, however, that the Due Process Clause does apply to the extent that it protects a pretrial detainee from the use of excessive force that amounts to punishment. *Id.* at n. 10.

 Plaintiffs allege that they were each arrested at the moment when they first spoke with defendant Dodd and he placed them in the car. Plaintiffs admit that it was necessary to require plaintiffs' attendance while defendant conducted his investigation and completed other necessary chores, such as writing the tickets. Clearly, plaintiffs were seized as part of an arrest or investigatory stop and were not pretrial detainees. Because plaintiffs' allegations concern the making of an arrest, the Court analyzes plaintiffs' claims under the Fourth Amendment and its reasonableness standard, rather than under a "substantive due process ap-

proach." *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871.

Defendant Dodd contends that he is entitled to qualified immunity to plaintiff Starnes and West's claims. In determining whether defendant Dodd's force was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interests. *Id.* The Supreme Court acknowledged that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396, 109 S.Ct. at 1872. The Court must look to the facts and circumstances of each case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is resisting arrest or attempting to flee. The Court must judge the use of force from the perspective of the officer on the street, "rather than with the 20/20 vision of hindsight." *Id.*

Because this standard establishes no bright line, qualified immunity applies unless application of this standard would inevitably lead every reasonable officer in defendant Dodd's position to conclude the force was unlawful. *Post,* 7 F.3d at 1559. Plaintiffs argue that they were not a threat to the officers or anyone else and that defendant knew his patrol car was uncomfortably hot. The Court holds, however, that all reasonable officers would not inevitably conclude that defendant Dodd's force was unlawful. Three vehicles and four people were involved in the house moving detail. The house had damaged the caution light at the intersection while plaintiffs moved it through the intersection. Defendant first had to direct plaintiffs where to move the house so that it would not continue to block traffic and to create a hazardous situation. He next needed to determine how to charge plaintiffs. It was not objectively unreasonable for defendant to hold plaintiffs Starnes and West in his patrol car so that he could maintain control over the people at the scene while he determined the charges against plaintiffs and wrote their tickets.

Plaintiffs contend that they told defendant that the patrol car was hot and that he was unsympathetic to their pleas. The Court concludes, however, that a reasonable officer likely would not know if he could safely leave plaintiffs in his patrol car with the engine running or if he could safely leave the windows down, giving them access to the car's front compartment. Although they were uncomfortable during the experience, plaintiffs have not pointed to any lingering injuries from the confinement. In light of all of the facts and circumstances, the Court holds that defendant Dodd is entitled to qualified immunity. That is, a reasonable officer could think that the level of detention was reasonable.

### 2. Claims against Dodd in his Official Capacity

A suit against a party in his or her official capacity is the same as suit against the governmental entity of which the officer is an agent. *Owens v. Fulton County,* 877 F.2d 947, 951 n. 5 (11th Cir.1989); *Familias Unidas v. Briscoe,* 619 F.2d 391, 403 (5th Cir.1980). A local government is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise. *Vineyard v. County of Murray,* 990 F.2d 1207, 1211 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 636, 126 L.Ed.2d 594 (1993).

In support of their suit against defendant in his official capacity (hereinafter referred to as the County), plaintiffs assert the existence of a County policy that sanctioned the detention of citizens in police cars in hot weather. Accordingly, the Court assumes that plaintiffs are contending that the County had a policy whose execution resulted in a deprivation of plaintiffs' Fourth Amendment right to be free of excessive force during a detention or arrest.[9] *See* discussion *supra* at 966.

---

9. Because plaintiffs point the Court only to a policy concerning the claims involving the condi-

■ Even assuming the existence of the required policy, the Court finds no liability because it finds no violation of plaintiffs' constitutional rights. When deciding whether an officer used excessive force when seizing a person, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interest. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871. As discussed *supra,* the right to arrest "necessarily carries with it the right to use some degree of physical coercion," and the Court must consider the circumstances of each case from the perspective of the officer on the street. *Id.* at 396, 109 S.Ct. at 1872.

In this case, defendant had seen the house moving detail move through the intersection, and as set forth *supra,* he had to direct plaintiffs where to move the house, to decide how to charge plaintiffs, and to maintain control over the scene. Accordingly, the Court concludes, as a matter of law, that defendant's holding of plaintiffs in his vehicle while undertaking the above steps was objectively reasonable and did not violate plaintiffs' Fourth Amendment right against the use of excessive force. *Cf. O'Neal v. Dekalb County,* 850 F.2d 653, 657 n. 6 (11th Cir. 1988).

■ Even if the officer's action were not objectively reasonable, the Court concludes that liability would not attach to the County because governmental entities may become liable for constitutional deprivations committed by their employees only when there is a governmental policy or custom whose execution has caused the infliction of the injury in question.[10]

■ Plaintiffs argue that the County had a policy of "detaining citizens in police cars without regard to climatic or other concerns." (Pls.' Resp.Br. in Opp'n to Def.'s Mot. for Summ.J. at 24). Plaintiffs' evidence for the existence of this policy is very slim. They cite to no formal written policy nor do they offer evidence from multiple employees

attesting to the existence of such a custom. Instead they cite only to defendant Dodd's deposition in which, in response to a question whether officers typically use the word "detain" in traffic stops, the officer replied:

> "I don't consider it detention when I sit someone in the backseat to write a traffic citation. It's just—it's policy within the County that when you have—when you're talking to someone in an investigative state or you're writing traffic citations that they have a seat in the rear of the car."

(Dodd Dep. at 53).

The Court finds that this single off-hand remark in Dodd's deposition testimony, which was not made in response to a question regarding county policies and after which plaintiffs' attorney asked no follow-up questions to define the contours of the alleged "policy," is too slender a reed on which to infer the existence of a county policy sanctioning the detention of persons in arguable violation of their constitutional rights.

Moreover, even if one could impute such an ill-defined policy to the County, plaintiffs have not shown how it *caused* their alleged injuries. The "policy" referred to by Officer Dodd does not require that officers have individuals "take a seat" in the rear of the car with the door closed, regardless of the weather conditions and the duration of the confinement. To attribute liability to a municipality under § 1983, the plaintiff must demonstrate that the municipality had an official policy that was "the moving force of the constitutional violation." *Vineyard,* 990 F.2d at 1211 (quoting *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)). Plaintiffs have not shown that the alleged "policy" caused defendant Dodd to hold plaintiffs in a hot car with the doors shut, notwithstanding any circumstances such as the outside temperature or the discomfort resulting to the detainees. Accordingly, summary judgment for defendant Dodd in his official capacity—that is, the County—is likewise appropriate because

tions of their detention in the patrol car, and have not identified a policy authorizing wrongful arrest, the Court concludes that defendant Dodd could not be liable in his official capacity for any wrongful arrest that may have occurred.

**10.** *See* cases cited *supra* at 967.

plaintiffs have failed to demonstrate that a County policy caused plaintiffs' alleged injuries.

### C. *Plaintiffs' State Law Claims*

Because the only claims over which the Court had original jurisdiction now have been dismissed from the case, § 1367(c)(3) applies.[11] As the Supreme Court has observed, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving ... state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) (footnote omitted). *See also Hardy v. Birmingham Bd. of Educ.,* 954 F.2d 1546, 1550 (11th Cir.1992). Accordingly, the Court dismisses the remaining state-law claims.

### CONCLUSION

Plaintiff West embarked on a venture in knowing violation of County law and enlisted in that effort the other two plaintiffs. Transporting a house through the streets of Fulton County without having obtained a permit or given the County the required 24 hours notice, and damaging a traffic light in the process, plaintiffs attracted, what could not have been for them unexpected, attention by the police. In the course of investigating the offense and determining how and whether to cite the plaintiffs, the police officer detained them. Although the officer perhaps could have acted somewhat more quickly in making his determination and perhaps could have been more solicitous of the discomfort that the two of them purportedly suffered by having to sit in a hot car during the process, the Court concludes that neither the officer

nor the County violated the plaintiffs' constitutional rights. Accordingly, the Court grants summary judgment to defendant on plaintiffs' claims under 42 U.S.C. § 1983 and dismisses plaintiff's state-law claims.

SO ORDERED.

---

11. This section provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).