[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 23-11636

Non-Argument Calendar

————————————————

KYNNEDI'RAE JOAN CHARLES,

Plaintiff-Appellant,

*versus*

POLICE OFFICER GARY WAYNE CHAMBERS,
POLICE OFFICER ROBERT GREENE,
POLICE OFFICER CHRISTOPHER RICHARD SCUDERI,
JOHN WAGNER, JR.,
individually and in his official capacity,
CITY OF WARNER ROBINS, GEORGIA,

Defendants-Appellees,

JOHN C. JUMP,
individually and in his official capacity,

                                                    Defendant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:21-cv-00153-MTT

_____

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Kynnedi'Rae Joan Charles appeals the district court's grant of summary judgment to Defendants-Appellees Officer Robert Greene, Officer Christopher Richard Scuderi, Chief John Wagner, Jr., and the City of Warner Robins (collectively, Defendants) on constitutional and state law claims arising out of her encounter with the Warner Robins Police Department (WRPD) while her car was being towed from a storefront parking lot. She argues that the district court erred in granting summary judgment: (1) in favor of Officers Greene and Scuderi on her Fourth Amendment claims of unlawful arrest and excessive force; (2) in favor of Officers Greene and Scuderi on her state law tort claims; and (3) in favor of the City of Warner Robins and Chief Wagner on

her supervisory liability and failure to train claims. After careful review, we find no error in the district court's decision and affirm.

## I.

We review a district court's grant of summary judgment de novo, "applying the same legal standard employed by the district court in the first instance." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1117 (11th Cir. 1993). Summary judgment is appropriate only when no genuine issue of material fact exists,[1] and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant has met this burden, we view the evidence in the light most favorable to the non-movant. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010).

The district court granted Officer Greene and Officer Scuderi summary judgment on Charles' unlawful arrest and excessive force claims, holding that the officers were entitled to qualified immunity.[2] To prevail on a qualified immunity defense, the officers must establish that they were acting under their "discretionary

---

[1] As the district court noted, Charles did not respond to Defendants' asserted facts with citations to the record, and she failed to provide her own statement of material facts that adequately cited to the record (despite the district court providing written notice of her duty to do so). Where Charles did not address Defendants' assertions of fact, the district court properly considered Defendants' asserted facts undisputed for summary judgment purposes. Fed. R. Civ. P. 56(e)(2); *see* M. Dist. Ga. R. 56.

[2] The unlawful arrest claim and the excessive force claim must be analyzed separately, even though they originated from the same fact pattern. *Richmond v. Badia*, 47 F.4th 1172, 1181 (11th Cir. 2022).

authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Charles does not dispute that Defendants were acting within the scope of their discretionary authority. Because the defendants have met this burden, the burden then shifts to Charles to show that: (1) the officers' conduct violated her constitutional rights; and (2) those rights were clearly established. *Id*. There are three ways to show a right is clearly established:

> (1) by pointing to a materially similar decision of the Supreme Court, of this Court, or of the supreme court of the state in which the case arose; (2) by establishing that a broader, clearly established principle should control the novel facts of the case; or (3) by convincing us that the case is one of those rare ones that fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary.

*Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (internal quotations omitted and alteration adopted).

Charles specifically argues that Officers Greene and Scuderi are not protected by the shield of qualified immunity because they violated her clearly established Fourth Amendment rights against unlawful arrest and excessive force by arresting her without probable cause, tasing her when she was not resisting arrest, pushing her against her car while wrenching her arm behind her back, and assisting with a repossession in violation of Eleventh Circuit law and Georgia repossession law.

## II.

We turn first to Charles' argument that Officers Greene and Scuderi violated her clearly established Fourth Amendment right against unlawful arrest by arresting her without probable cause. The Fourth Amendment protects citizens from searches and seizures that are unreasonable, including unlawful arrests. *See Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009). A warrantless arrest without probable cause is per se unconstitutional, and it provides a basis for a false arrest claim under 42 U.S.C. § 1983. *Id*. at 1326–27. On the other hand, if probable cause supports the arrest, the arrestee has no basis for a § 1983 action. *Id*. "Probable cause exists when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013) (internal quotation marks omitted).

Based on the facts in the record, construed in the light most favorable to Charles, the district court held that Officers Greene and Scuderi had probable cause to arrest Charles for two different crimes under Georgia law: reckless conduct and obstruction of an officer. We agree.

Under Georgia law, reckless conduct occurs when:

A person . . . causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his or

her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

O.C.G.A. § 16-5-60(b).

As evidenced by the cell phone video in Officer Greene's bodycam footage, Charles' attempt to drive her car off the tow truck while it was still attached endangered the safety of other people because the tires were turning, and the car was bouncing. The vehicle could easily have broken free and hit the stores in front of it. Charles disputes the officers' accounts of what is shown in the video, arguing that she did not realize her car was hooked up to the tow truck when she tried to back out of her parking spot. She also argues, citing to *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008), that the district court should have considered her account of what is happening in the video, rather than accepting Defendants' account.

However, we have previously made clear that "we accept video evidence over the nonmoving party's account when the former obviously contradicts the latter." *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022). Officer Greene's bodycam footage is clear—the cell phone video shown in the footage depicts the rear of the car bouncing as the tires spun, and the video evidence clearly contradicts Charles' account of the facts (albeit an account that was not properly submitted to the district court on summary

judgment). Thus, the district court was correct in finding that there was probable cause to arrest Charles for reckless conduct.

We also agree with the district court's holding that the officers had probable cause to arrest Charles for obstruction of an officer, based on her conduct when the officers tried to remove her from the vehicle. Under Georgia law, obstruction of an officer occurs when someone "knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his or her official duties by offering or doing violence to the person of such officer." O.C.G.A. § 16-10-24(b). Charles refused the officers' requests to exit the vehicle, and when the officers tried to remove her, she placed the car in drive and floored the accelerator. She also resisted and struggled against the officers when they tried to place handcuffs on her. [3] The interaction resulted in injury to Officer Greene's hand.

Thus, we affirm the district court's grant of summary judgment to Officer Greene and Officer Scuderi on Charles' Fourth Amendment claim of unlawful arrest.

---

[3] Citing *Glenn v. State*, 849 S.E.2d 409, 420 (Ga. 2020), Charles argues she has the right under Georgia law to resist unlawful arrests without committing the offense of obstruction, and her arrest was unlawful because the officers had no lawful reason to ask her to exit her car. While she is correct about her right under Georgia law, we are unpersuaded by her argument because the arrest was lawfully supported by probable cause.

**III.**

Next, we turn to Charles' argument that Officers Scuderi and Greene violated her clearly established Fourth Amendment right to be free from excessive force by tasing her when she was not resisting arrest, by pushing her into her vehicle, and by wrenching her arm behind her back with some force. Indeed, the Fourth Amendment protects citizens against the use of excessive force in arrests. *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021). A particular use of force is unconstitutional if it is objectively unreasonable "under the facts and circumstances of a specific case," judged from the perspective of a reasonable officer on the scene. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017).

In making that determination, a court first decides "whether the specific kind of force is categorically unconstitutional." *Charles*, 18 F.4th at 699. If not, the court considers whether the amount of force was excessive, weighing the following factors:

> (1) the severity of the suspect's crime, (2) whether the suspect poses an immediate threat of harm to others, (3) whether the suspect is actively resisting arrest or trying to flee, (4) the need for the use of force, (5) the relationship between the need for force and the amount of force used, and (6) how much injury was inflicted.

*Wade v. Daniels*, 36 F.4th 1318, 1325 (11th Cir. 2022).

We turn first to the alleged tasing of Charles. In this circuit, taser use "is not categorically unconstitutional." *Charles*, 18 F.4th at 701 (collecting cases). As a result, we next determine whether the use of a taser was an excessive amount of force under the circumstances. We agree with the district court's analysis of the factors. Even interpreting all facts in favor of Charles, her actions posed an immediate risk of harm to the people in the building in front of her, the tow truck driver, and the police officers. She refused the officers' request to exit the vehicle after trying to drive it off the bed of the truck, requiring the police to use some force to remove her from the vehicle, and she sustained minor injuries. Therefore, even if Charles was tased, the tasing was not excessive and was not, therefore, unconstitutional.

We turn next to the pushes, pulls, and shoves used to remove Charles from the car. During an arrest, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Baxter v. Roberts*, 54 F.4th 1241, 1269 (11th Cir. 2022) (quotation marks omitted). Additionally, we have declined to find excessive force in cases with pushes, shoves, and pulls more extreme than the instant case. *See, e.g.*, *Nolin v. Isbell*, 207 F.3d 1253, 1255–59 (11th Cir. 2000); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351–53 (11th Cir. 2002). Charles argues that the district court failed to properly consider the fact that she was pregnant at the time of the altercation. Pointing to *Moore v. Gwinnett County*, 967 F.2d 1495 (11th Cir. 1992), Charles claims that in determining whether a particular exercise of force is excessive,

courts must consider the individual characteristics of each party, including the suspect's pregnancy.

However, in *Moore*, we held that the officer's use of force to physically restrain a pregnant suspect attempting to flee the scene of a misdemeanor was not unreasonable. 967 F.2d at 1499. Charles fails to cite any cases where a particular use of force was excessive due to the pregnancy of the defendant. If excessive force did not occur in *Nolin*, *Rodriguez*, and *Moore*, it most certainly did not occur here. We agree with the district court that the pushes, shoves, and pulls that the police utilized to remove Charles from the car, including pushing her against the car and moving her arm behind her back, were de minimis and therefore constitutional.

Thus, we affirm the district court's grant of summary judgment to Officer Greene and Officer Scuderi on Charles' Fourth Amendment claim of excessive force.

## IV.

Next, we turn to Charles' argument that Officers Scuderi and Greene violated clearly established law by assisting with the self-help repossession of her car. Charles points to *Wright v. Sheppard*, 919 F.2d 665, 673 (11th Cir. 1990) to support her claim.[4]

---

[4] She also cites Georgia repossession law. *See Fulton v. Anchor Sav. Bank, FSB*, 452 S.E.2d 208, 213 (Ga. 1994) (explaining that once the debtor starts protesting the repossession, the repossession itself is no longer peaceful and becomes illegal). However, we find it inapplicable to the situation before us. We are not asked to determine whether the repossession itself was lawful. Our present

*Wright* states that "[i]f an officer departs from the role of neutral law enforcement officer by attempting to enforce a private debt collection, and engages in conduct that effectively intimidates an alleged debtor into refraining from exercising her legal rights, then the officer exceeds constitutional limits on his authority." *Id.* at 673; *cf. Booker v. City of Atlanta*, 776 F.2d 272, 273–74 (11th Cir. 1985) (per curiam) (holding that an officer's "mere presence" at truck repossession "to prevent a breach of the peace" would not be sufficient to give the court subject matter jurisdiction over "state action" § 1983 claim).

Charles cites our precedent in *Wright*, which cites *Booker*, but both cases are distinguishable. In *Wright*, a police officer took a debtor into his patrol car and brought him to the home of the creditor to discuss the debt—notably, the debtor did not want to go with the officer to the home of the creditor, and the officer made the debtor go under "the threat of force." 919 F.2d at 668. Here, Charles admits in her affidavit that *she* was the one who initially called the police, Doc. 62 ¶¶ 5–7, not the creditor who was trying to enforce the debt. Charles wanted the police involved—the debtor in *Wright* did not.

In *Booker*, a police officer stood watch over a repossession to ensure that it took place peacefully. 776 F.2d at 273. We held that summary judgment was improper because a jury could find that the officer's "arrival with the repossessor gave the repossession a

---

consideration is to determine whether the defendants' rights were violated by the police, not by the private creditor or towing company.

cachet of legality and had the effect of intimidating Booker into not exercising his legal right to resist." *Id.* at 274. We contrasted that case with *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980),[5] where the defendant police officers arrived on scene and "became involved only after a breach of the peace was threatened." *Booker*, 776 F.2d at 274 (referencing the facts in *Menchaca*).

Here, unlike in *Booker*, the police did not accompany the repossessor to the scene; they were responding to Charles' call after she saw the repossessor towing her car. *See id.* Also in *Booker*, there was an issue of fact as to whether the officer's presence intimidated the debtor into not exercising his legal right to resist. *Id.* In our case, Charles did everything she could to resist, literally resisting arrest, to try to exercise the rights she thought she had.[6] Thus, Officers Greene and Scuderi did not assist with a self-help repossession in violation of "clearly established law."

## V.

We next turn to Charles' claims that Officers Greene and Scuderi committed the torts of assault, battery, negligence, intentional infliction of emotional distress, and negligent infliction of

---

[5] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that all the decisions of the "old Fifth" Circuit handed down prior to close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

[6] Additionally, the constitutional issues at play in *Booker*—procedural due process and state action—are distinctly different from the constitutional issues Charles raised at the district court and again on appeal—Fourth Amendment unlawful arrest and excessive force. *Booker*, 776 F.2d at 273.

emotional distress. The district court granted summary judgment to the officers on all the state law claims on the ground that Officers Greene and Scuderi are entitled to official immunity under Georgia law.

Official immunity covers "discretionary actions taken within the scope of [an officer's] official authority." *Gates v. Khokhar*, 884 F.3d 1290, 1304 (11th Cir. 2018) (footnote and quotation marks omitted). In Georgia, official immunity protects officers from personal liability as long as the "officer[s] did not act with 'actual malice' or 'actual intent to cause injury.'" *Id*. (quoting Ga. Const. art. I, § 2, para. IX(d)). Actual malice means "a deliberate intention to do wrong." *Id*. (quotation marks omitted). Actual intent to cause injury means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Id*. (quotation marks omitted).

As we explained, Officers Greene and Scuderi were operating within their discretionary authority. The record also demonstrates that Officers Greene and Scuderi did not have a deliberate intention to do wrong. They tried to peacefully remove Charles from the vehicle and only used the force necessary to remove her after she recklessly attempted to drive the car off the tow truck. Their efforts were intended to end the dangerous situation, not to do wrong; thus, their actions show no evidence of actual malice. Additionally, when Officers Greene and Scuderi removed Charles from the vehicle, they did so after she turned the car on, floored the accelerator, and obstructed their attempts to remove her from

the vehicle. Once they had her out of the car and in cuffs, they applied no additional force. Thus, there is no evidence that they intended to cause harm to Charles, and the Officers showed no actual intent to cause injury. As a result, we affirm the district court's decision that Officer Greene and Officer Scuderi are entitled to official immunity on the Georgia tort claims.

## VI.

Finally, we turn to Charles' argument that Chief Wagner and the City of Warner Robins are liable under a theory of supervisory liability and failure to train. We address Chief Wagner first and then turn to the City of Warner Robins.

As to Chief Wagner, as the district court noted, "it is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (internal quotation marks omitted and alteration adopted). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.* at 1047–48.

Similarly, a supervisor can be liable for failure to train under 42 U.S.C. § 1983 when the "failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains." *Belcher v. City of Foley*, 30 F.3d 1390,

1397 (11th Cir. 1994) (internal quotation marks omitted). The plaintiff must show that "the supervisor had actual or constructive notice that a particular omission in their training program causes his or her employees to violate citizens' constitutional rights, and that armed with that knowledge the supervisor chose to retain that training program." *Keith*, 749 F.3d at 1052 (internal quotation marks omitted and alteration adopted).

As we found that no violations of Charles' constitutional rights occurred, we also find that Chief Wagner is not liable to Charles on theories of supervisory liability and failure to train. The district court did not err in granting summary judgment to Chief Wagner.

Next, we turn to the alleged liability of the City of Warner Robins. A "[c]ity is not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those officers violated [a party's] constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Section 1983 liability for "failure to train or supervise" occurs "only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Id*. Based on that standard, a violation of the plaintiff's constitutional rights is required to find the City liable. *See id*. Because we held that Officers Greene and Scuderi did not violate Charles' constitutional rights, the City cannot be held liable under 42 U.S.C. § 1983.

## VII.

In sum, we affirm the district court's grant of summary judgment in favor of Officers Greene and Scuderi on Charles' Fourth Amendment unlawful arrest and excessive force claims and her Georgia tort claims, and grant of summary judgment in favor Chief Wagner and the City of Warner Robins on Charles' supervisory liability and failure to train claims.

**AFFIRMED.**