[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15629

_____

D.C. Docket No. 1:11-cv-03163-AT

TONY SPEIGHT,
FELICE CUNNINGHAM,
Individually and as Parents and
Natural Guardians of D.M.C., a Minor,

Plaintiffs-Appellants,

versus

BENJAMIN W. GRIGGS, Corporal,
FULTON COUNTY, GEORGIA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 13, 2015)

Before ED CARNES, Chief Judge, TJOFLAT and SENTELLE,[*] Circuit Judges.

PER CURIAM:

Plaintiffs Tony Speight and Felice Cunningham appeal the grant of summary judgment to Fulton County and Fulton Police Corporal Benjamin Griggs on their 42 U.S.C. § 1983 claim for violation of their minor son D.M.C.'s Fourth Amendment rights.[1]

## I.

We state the facts in the light most favorable to the plaintiffs.  Mobley v. Palm Beach Cnty. Sheriff Dep't, 783 F.3d 1347, 1350 (11th Cir. 2015).  Because the outcome of this appeal is dependent on its highly unusual facts, we set them out in some detail.

## A.

In the late evening of July 28, 2011, Speight and Cunningham's sixteen-year-old son D.M.C. was the passenger in a stolen Honda Accord being driven by his friend Jontavious Darden.  Speight v. Griggs, 579 F. App'x 757, 758 (11th Cir. 2014) (unpub.) (hereinafter Speight I).  After visiting a friend in Union City,

---

[*] Honorable David Bryan Sentelle, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

[1] Because D.M.C. was a minor child at the time of the incident, we identify him by his initials under Federal Rule of Civil Procedure 5.2(a)(3) and the terms of a protective order issued by the district court in this case.

2

Georgia, Darden saw a police car parked under a streetlight.  He panicked, pulled

the stolen car into a Chevron gas station, and parked it in a parking spot.

Just after midnight on what was now July 29, Fulton County Police Officer

Michael Guin (apparently the officer whose car Darden had seen) was patrolling

the area and stopped at the Chevron to conduct a "business check," following up

on an incident that had happened earlier in the evening.  The Chevron clerk

described the suspects in the earlier incident as two young men wearing light-

colored shirts, one of whom had a gun in his waistband.  Seeing D.M.C. and

Darden — both of whom were wearing white shirts — sitting in the parked car,

Officer Guin ran a search on the Accord's plates on the computer in his car.  The

search indicated that the car was stolen.  Guin parked his car, drew his gun, and "in

a felony stop manner" approached the Accord with Darden and D.M.C. in it.  He

pulled open the driver's door.  Darden, preparing to get out of the car, took his foot

off the brake, and the Accord began rolling backward toward Officer Guin's car.

Officer Guin reached through the open driver's door to engage the Accord's

emergency brake.  While this was happening, D.M.C. got out of the car and ran.

Officer Guin neither chased him nor ordered him to stop.

Officer Guin struggled briefly with Darden and radioed for backup.  After

Guin put one handcuff bracelet on him, Darden managed to escape and ran toward

3

a Motel 6 located adjacent to the Chevron.  Officer Guin briefly gave chase, but then thought better of it and decided to wait for his backup to arrive.

That backup consisted of several officers, including defendant Griggs, Fulton County Sheriff's Office K-9 Officer Corey Henry and his dog Marco, and Detective Marty McHugh.  Officer Guin gave them a description of Darden, including that he was wearing a single handcuff bracelet, but Guin did not describe D.M.C. or even indicate that a second person had fled from the vehicle.

After a brief initial search, Marco indicated that the suspect had fled into a heavily wooded area behind the Motel 6.  Griggs, Henry, and McHugh volunteered to search the wooded area.  Because the woods were dense and dark the officers had to use flashlights.  Soon after entering the woodline, the officers split up, with Griggs and Henry following Marco's tracking, while McHugh went in a different direction.  Griggs had drawn his service firearm and was using the tactical light mounted under its barrel to see his way through the woods.

The two officers and the dog passed through a narrow belt of trees into a clearing with some abandoned buildings in it. Officer Henry heard a voice — which turned out to be D.M.C.'s — call out "Okay, okay, okay, I give."  Marco began barking, and Griggs turned to see Henry looking back the way they had come, toward a large tree.  Henry yelled out commands to "get down" and "let me see your hands."  At first, Henry says, he could see only D.M.C.'s raised right

4

hand, but when D.M.C. stepped out from behind the tree Henry saw that both his hands were raised.  D.M.C. went down to his knees.

Officer Griggs says he didn't hear D.M.C. surrender, and says he also couldn't see D.M.C. because a large tree was in the way.  He moved to a position where he could see D.M.C.'s left side, and he told D.M.C. to "get down" and to "get on the ground."  When D.M.C. went to his knees, Griggs says he could see only D.M.C.'s left hand.  Griggs told Officer Henry he was going to "go hands-on," which meant that he was going to put handcuffs on D.M.C.  He requested that Henry provide a light because he was going to holster his gun with its attached light.

Instead of waiting for Officer Henry to respond, Officer Griggs with his gun still out and pointed rushed at D.M.C. and forced him to the ground with a "push-kick."  When the two of them fell to the ground, they fell behind the large tree and Henry could no longer see what was happening.

Fulton County regulations prohibit officers from "plac[ing] their fingers inside the trigger guard of their firearms" unless "they reasonably believe their life is in danger or that they will suffer serious bodily injury."  When a Fulton County officer has a drawn gun in his hand, the regulations require that he "index" it — that is, place his index finger along the cocking slide of the gun outside the trigger guard.  The regulations also prohibit officers from "going hands-on with

5

arrestees/detainees while their firearms are drawn." The County trains its officers "to holster their weapons when they lay hands on a suspect to make an arrest."

Griggs had undergone more than two dozen firearms training exercises, including three in a "Judgmental Pistol Shooting Simulator." The undisputed facts show, however, that Griggs had his gun drawn and aimed when he rushed at D.M.C. and forced him to the ground. They also show that his finger was not "indexed" outside the trigger guard but was instead inside the trigger guard and on the trigger. Less than five seconds after he forced D.M.C. to the ground, Griggs pulled the trigger of his gun. The gun discharged once. The bullet struck D.M.C. in the left hand and the back of the head. D.M.C. suffered catastrophic injuries including severe brain damage, and his medical expenses have exceeded a million dollars. Officer Griggs contends that the shooting was an accident — that he did not intend to pull the trigger.

## B.

On September 19, 2011, Speight and Cunningham filed a complaint in the district court, seeking damages for the violation of D.M.C.'s Fourth Amendment right to be free from unreasonable seizures.[2] They later amended the complaint to

---

[2] The plaintiffs also asserted state law claims. In a separate interlocutory appeal we held that those claims were barred under Georgia state law by official immunity. Speight I, 579 F. App'x at 759–60.

assert a <u>Monell</u> claim[3] against Fulton County for defective customs and policies and failure to train.  On September 24, 2013, the district court granted summary judgment in favor of Officer Griggs on the Fourth Amendment claim, ruling that he was entitled to qualified immunity because he had not violated D.M.C.'s Fourth Amendment rights.  Because it found no violation of D.M.C.'s constitutional rights, the district court did not reach the second prong of the qualified immunity test, which asks whether the rights violated were clearly established.  The district court also granted summary judgment in favor of Fulton County on the ground that there was no underlying constitutional violation for which the county could be liable.  This is the plaintiffs' appeal.

## II.

We review <u>de novo</u> a grant of summary judgment, viewing all evidence and drawing all inferences in the light most favorable to the non-moving party. <u>Mobley</u>, 783 F.3d at 1352.  Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

---

[3] In <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978), the Supreme Court held that 42 U.S.C. § 1983 imposed "liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights."  <u>Id.</u> at 692, 98 S. Ct. at 2036.

The qualified immunity doctrine allows "officials to carry out discretionary duties without the chilling fear of personal liability." McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009). An officer is entitled to qualified immunity if he was "acting within his discretionary authority" and did not violate a clearly established right with his alleged misconduct. Mobley, 783 F.3d at 1352–53 (alteration and quotation marks omitted). There is no dispute that Officer Griggs was acting within his discretionary authority when he pursued, arrested, and injured D.M.C. So the questions remaining before us are whether he violated a right of D.M.C.'s, and if so whether that right was clearly established.

The Fourth Amendment guarantees that the "right of the people to be secure . . . against unreasonable . . . seizures[ ] shall not be violated." U.S. Const. Amend. IV. That freedom "encompasses the right to be free from excessive force during the course of a criminal apprehension." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009).

In this circuit, there is no clearly established right to be free from the accidental application of force during arrest, even if that force is deadly. But we have long held that it is a violation of the Fourth Amendment for a police officer to intentionally "use[] gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." Saunders v. Duke, 766 F.3d 1262, 1265 (11th Cir. 2014); see also Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir.

8

2002); Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000); Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000). So the outcome of this case turns on the issue of whether Officer Griggs intended to shoot D.M.C. But that issue is only "genuine" for summary judgment purposes if "the evidence is such that a reasonable jury could return a verdict" in the plaintiffs' favor, which is to say reasonably could find that Griggs intended to shoot D.M.C. Liberty Lobby, 477 U.S. at 248, 106 S. Ct. at 2510.

Juries may infer intent, or the lack of it, from the surrounding circumstances and the defendant's conduct. See United States v. Bradley, 644 F.3d 1213, 1239 (11th Cir. 2011); United States v. Cotton, 770 F.2d 940, 946 (11th Cir. 1985). And ordinarily, courts presume government officials have properly discharged their duties. Bracy v. Gramley, 520 U.S. 899, 909, 117 S. Ct. 1793, 1799 (1997).

Given the unique facts of this case, we are unable to say that no jury reasonably could find that Officer Griggs' shooting of D.M.C. was intentional. Griggs is a highly trained and by all accounts competent officer whose training, and the regulations he was supposed to follow, included the admonition that he must not place his finger on the trigger unless he was in a situation in which he intended to use deadly force. He admits that he had his finger on the trigger, and he admits that he pulled the trigger, though he denies doing so intentionally. There are conflicting stories from Officer Griggs and Officer Henry about the moments

9

leading up to the shooting and the actions Griggs took to bring D.M.C. under control. Viewing the evidence in the light most favorable to the plaintiffs (as we must) and drawing all reasonable inferences in their favor (as we must) on this record and given these highly unusual circumstances we cannot say that a jury could not reasonably infer that Officer Griggs meant to fire his gun. For that reason we will vacate the district court's grant of summary judgment to Officer Griggs and remand the case for further proceedings.

## III.

We turn now to the plaintiffs' Monell claim. We may affirm a grant of summary judgment on any ground supported by the record, "regardless of whether the district court relied on that ground." McCabe v. Sharrett, 12 F.3d 1558, 1560 (11th Cir. 1994). Inadequate training can support § 1983 liability but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1107, 1204 (1989). We will likewise only find Monell liability for an allegedly unconstitutional custom or policy when there is an "affirmative link" between the custom or policy and the constitutional violation — that is, when the custom or policy is the "moving force" behind the constitutional violation. City of Springfield v. Kibbe, 480 U.S. 257, 267, 107 S. Ct. 1114, 1119–20 (1987). If the policy itself is not unconstitutional, we require "considerably more proof than [a]

10

single incident . . . to establish both the requisite fault on the part of the municipality and the causal connection between the policy and the constitutional deprivation." Id. at 270–71, 107 S. Ct. at 1121 (quotation marks omitted).

The plaintiffs present no convincing argument that Fulton County's training policies are unconstitutional, and the single incident at issue here is not enough for us to find municipal liability. See id. The record refutes any suggestion that there was a failure to train Griggs on the proper use of firearms. Far from showing "deliberate indifference to the rights of persons with whom the police come in contact," see Harris, 489 U.S. at 388, 109 S. Ct. at 1204, Fulton's training and Griggs' participation in that training were conscientious, thorough, and well tailored to the purpose of enhancing public safety. For those reasons, we affirm the grant of summary judgment in favor of Fulton County.

**AFFIRMED IN PART**, **VACATED IN PART**, and **REMANDED** for further proceedings consistent with this opinion.[4]

---

[4] Appellees' Joint Motion to Supplement the Record Pursuant to Fed. R. App. P. 10(e) is **DENIED**.