**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

––––––––––––––––––––––

No. 25-10782
Non-Argument Calendar

––––––––––––––––––––––

ANDREW H. PEARS,
    Administrator for the Estate of Jonathan Pears, deceased,
    and individually,

                              *Plaintiff-Appellee,*

*versus*


BILL FRANKLIN,
    Sheriff, in his individual capacity, et al.,

                              *Defendants,*

ARNOLD OLIVER, III,

                              *Defendant-Appellant.*

––––––––––––––––––––––

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:21-cv-00668-CLM-JTA

––––––––––––––––––––––

2                    Opinion of the Court                    25-10782

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and BRASHER, Circuit Judges.

PER CURIAM:

Officer Edward Arnold Oliver, III, appeals the denial of summary judgment based on qualified immunity from Andrew Pears's complaint that Oliver violated his Fourth Amendment right to be free from excessive force. *See* 42 U.S.C. § 1983. Oliver argues that his actions were objectively reasonable because of the "tense, dangerous, and rapidly evolving" circumstances. He also argues that no clearly established law provided him fair notice that his conduct was unconstitutional. Because Oliver's use of force was excessive and violated clearly established law, we affirm.

## I. BACKGROUND

On the evening of July 28, 2021, Jonathan Pears, a veteran with post-traumatic stress disorder, suffered a mental health crisis after he stopped taking medicine prescribed at the Veterans Administration Medical Center in Tuskegee, Alabama. Jonathan bought two firearms that day and returned home agitated, combative, and intoxicated. He began to argue with his mother, Mary Pears. To de-escalate the situation, Jonathan's father, Andrew Pears, took him out into the woods around their home to fire a few rounds from one of the guns. When they returned home, Pears asked Jonathan to give him the gun. Jonathan refused. Pears tried to take the gun away, and the two began to wrestle. Mary, who was on the phone with a 911 dispatcher by this point, managed to take the gun

from Jonathan's pocket, push it across the floor to a bedroom, and lock herself and the gun inside.

The dispatcher told Mary that officers were "coming through the woods," despite her request that they come through the front door. The situation escalated when Jonathan overheard this conversation. Jonathan exclaimed that he was "not going back," and that he would "defend himself." He then ran upstairs and retrieved a knife.

As the officers arrived, Pears walked out the front door of the home with his arms and hands extended to meet the officers and update them on the situation. Oliver ordered Pears to put his hands up, so Pears raised them higher. Oliver then handcuffed Pears, dragged him toward the street, and tackled him to the ground. At some point, Pears lost consciousness, and the next thing he recalled was being at the bottom of the driveway, unable to breathe because Oliver's knee was on his back. After Pears told Oliver he could not breathe, Oliver released some pressure and turned Pears to face the home.

Almost immediately, Pears saw Jonathan exit the front door, turn, walk parallel to the home, and heard Boddie command Jonathan to "drop the fucking knife" three times before firing three shots and killing Jonathan. Afterward, officers took Pears to the sheriff's office for questioning. A diabetic who suffers from post-traumatic stress disorder, Pears suffered a seizure while sitting in the patrol car and became dizzy and fell as officers led him up the steps of the sheriff's office. The next day, he saw his doctor who

observed his bruising and referred him to physical therapy for injuries to his shoulder.

Pears filed this suit in the district court on behalf of himself and his son's estate and against Boddie, Oliver, and other law enforcement officers. Pears asserted three claims of excessive force. 42 U.S.C. § 1983. This appeal concerns only Pears's claim that Oliver used excessive force against him in violation of the Fourth Amendment. 42 U.S.C. § 1983.

Oliver moved for summary judgment based on qualified immunity, which the district court denied. The district court ruled that the law was "clearly established" that officers may not use gratuitous force against an individual who is "subdued" or otherwise "not a threat" and who has not "actively resisted arrest."

## II. STANDARDS OF REVIEW

Two standards govern our review. First, we review a denial of qualified immunity *de novo* and, on a motion for summary judgment, we view the evidence in the light most favorable to the non-moving party. *Nelson v. Tompkins*, 89 F.4th 1289, 1295 (11th Cir.), *cert. denied*, 145 S. Ct. 178 (2024). Second, we review the decision not to strike an affidavit as a "sham" for an abuse of discretion. *See Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016).

### III. DISCUSSION

"When officers raise the defense of qualified immunity, they have the burden to establish that they were acting within their discretionary authority." *Settle v. Collier*, 160 F.4th 1282, 1288 (11th Cir. 2025) (citation and internal quotation marks omitted). "If the officers satisfy that burden, the burden then shifts to the plaintiff to establish that the officers violated a constitutional right that was clearly established at the time of the alleged violation." *Id.* (citation and internal quotation marks omitted). "We may review whether there was a violation or whether the violation was clearly established in either order." *Id.* Pears does not dispute that Oliver was acting within his discretionary authority during the incident. So the burden shifted to Pears to prove that Oliver violated Pears's clearly established constitutional rights.

"[E]xcessive force claims are governed by an 'objective reasonableness' standard." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "[W]e look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *Id.* (citation and internal quotation marks omitted). We consider "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). We also consider "the need for the application of force,"

"the relationship between the need and amount of force used," and "the extent of the injury inflicted." *Id.* (citation and internal quotation marks omitted).

As a threshold matter, we reject Oliver's argument that the district court abused its discretion when it refused to disregard portions of Pears's declaration that concerned the sequence of events after he exited the home. Although the sequence of events in Pears's declaration differs from his deposition testimony, it does not "flatly contradict" it. *See Furcron*, 843 F.3d at 1306.

When we consider Pears's version of the events, as we must do, Oliver's use of force was objectively unreasonable. *Settle*, 160 F.4th at 1288. Pears committed no crime, posed no immediate threat to the officer's safety, and was not resisting arrest or attempting to flee. *Mobley*, 783 F.3d at 1353; *see also Graham*, 490 U.S. at 396. Pears instead exited the home with his hands extended and raised them higher upon command. Yet, Oliver handcuffed, dragged, and tackled Pears and pinned Pears by placing his knee on Pears's back. Because Pears was a compliant, non-threatening individual, there was no need for the application of force, which renders the relationship between the force used and the extent of Pears's injuries disproportionate. *See Mobley*, 783 F.3d at 1353.

At the time of the incident, it was clearly established that an officer may not use gratuitous force on a non-resisting individual who no longer poses a threat to his safety. *See Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) ("Our case law clearly establishes that the use of force against an [individual] who . . . is not a

threat, has not exhibited aggressive behavior, and has not actively resisted arrest is excessive."). "A right is clearly established if controlling law gave the official fair warning that his conduct violated that right." *Nelson*, 89 F.4th at 1299. Because Oliver violated Pears's clearly established constitutional right to be free from excessive force, he is not entitled to qualified immunity.

## IV. CONCLUSION

We **AFFIRM** the denial of qualified immunity.